## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL FELDKAMP,       )

         )

        Plaintiff,    )    **Case No.  2:24-cv-02220-JAR-TJJ**

         )

v.         )

         )

THE UNIVERSITY OF KANSAS    )

HOSPITAL AUTHORITY,    )

         )

        Defendant.    )

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF SUMMARY JUDGMENT

Plaintiff's claims should be dismissed. Plaintiff does not offer any admissible record evidence that his age resulted in his termination or that he was retaliated against for reporting a reportable incident in accordance with the Kansas Risk Management Act. Plaintiff offers no more than an unsupported theory of discrimination based on speculation and belief that his supervisors were "out to get" him. Plaintiff also fails to offer law contradicting that which was relied upon by UKHA. Instead, he relies on his own conclusions, including those in a sham affidavit, to try and muster up a genuine issue of material fact that simply does not exist.  UKHA, therefore, is entitled to summary judgment.

I.    **UKHA's Statement of Facts ("SOF") are uncontroverted, material, and should be admitted.**

Uncontroverted Facts: Plaintiff did not controvert UKHA's **SOFs 1-14, 30-31, 33-35, 39-41, 53, 55, 58, 63-67, 69, 73-75, 80, 85-87, 90, 92, 95, 97, 99, 101, 103, 107, 109, 113-124, 127, 130-133, 136-138, 141-143, 147-149, 153, 155, 160-162**. Thus, those facts are admitted for summary judgment purposes. D. Kan. R. 56.1.

Improperly Controverted Facts: Plaintiff failed to properly controvert **SOFs 15, 16-29, 32, 36-38, 42-52, 54, 56-57, 59-62, 68, 70-72, 76-79, 81-84, 88-89, 91, 93-94, 96, 98, 100, 102, 140-106, 108, 110, 111-112, 125-126, 128-129, 134-135, 139-140, 144-146, 150-152, 154, 156-159.**

Plaintiff attempts to controvert the facts with his own version of events, speculation, and non-

responsive information. Plaintiff uses "Controverted" to indicate his disagreement and dislike for the facts, regardless of whether the fact is truly controverted. The above-mentioned SOFs, therefore, should be deemed admitted. UKHA provides further explanation as to how Plaintiff fails to controvert certain of those SOFs as follows:

Failure to properly controvert by using impermissible speculation, personal belief and conjecture **(SOFs 15-19, 46, 47, 48, 49-52, 54, 56, 57, 81-84, 105-106, 108, 110-112, 146, 150-152, 154, 156-159):** Plaintiff attempts to controvert these SOFs by providing non-responsive information and his own version of events based on speculation, personal belief, and conjecture. This does not properly controvert the SOFs. *See* D. Kan. R. 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless *specifically controverted* by the statement of the opposing party.") (emphasis added); *see also Colony Nat. Ins. Co. v. Omer*, No. 07–2123–JAR, 2008 WL 2309005 (D. Kan. June 2, 2008) ("The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.").

Failure to properly controvert by relying on others' opinions who lack foundation **(SOFs 21, 22, 23, 26, 29, 32, 88, 89):** Plaintiff tries to controvert these SOFs with non-responsive information about others' opinions, which cannot controvert the perceptions of decisionmakers.

Failure to properly controvert by using non-responsive allegations and personal opinion **(SOFs 20, 24-25, 27-28, 36-98, 42, 43, 44-45, 47, 48, 49-52, 59-62, 68, 70-72, 76-79, 81-84, 88-89, 91, 93-94, 96, 98, 100, 102, 104, 144-146, 150-152, 154, 156-157, 159):** Plaintiff attempts to controvert these SOFs by challenging the veracity of the complaints about Plaintiff with his own opinions about his performance and behavior. This is insufficient. *See Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1107 (10th Cir. 2008) (determining manager's perception of the employee is relevant, not plaintiff's subjective evaluation of their performance). Plaintiff provides no argument

or facts suggesting decision-makers had a reason to question the truth of complaints; thus, Plaintiff's opinions are meritless. *See Kendrick v. Penske Transp. Servs, Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) (requiring courts to look at facts as they appear to decision-maker).

Failure to properly controvert by misstating cited testimony and referring to a record that does not support his allegations **(SOFs 81-84, 125-126, 128-129, 134-135, 139-140, 159):** Plaintiff fails to controvert these SOFs because he misstates the cited testimony, and the record upon which he relied does not support his characterization of the facts.

Based upon the above, UKHA's **SOFs 15, 16-29, 32, 36-38, 42-52, 54, 56-57, 59-62, 68, 70-72, 76-79, 81-84, 88-89, 91, 93-94, 96, 98, 100, 102, 140-106, 108, 110, 111-112, 125-126, 128-129, 134-135, 139-140, 144-146, 150-152, 154, 156-159** should also be admitted for summary judgment.

## II.    Plaintiff's additional statements of facts are not properly supported by the record, are immaterial, and should be disregarded.

Plaintiff submitted Plaintiff's Statement of Additional Material Facts ("PSOF") 1-42 as additional statements of facts, which are comprised of assertions that lack evidentiary support, rely on speculation and conclusory opinions, or are immaterial. Although UKHA need not respond to all of Plaintiff's statements, including those that are not cited in Plaintiff's Argument, UKHA does so to further demonstrate the Court should rely on the uncontroverted facts submitted by UKHA.

PSOF 1.       **Controverted as not supported by the record or admissible evidence and immaterial.** PSOF 1 is merely Plaintiff's conclusory and legal opinion about a theory of discrimination, and, to defeat summary judgment, "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight[.]"). Feldkamp's only evidence to support his opinion is his own Declaration, which is an inadmissible sham affidavit offered to "attempt[] to explain" his deposition testimony and create a dispute where none

exists. *See Gabaldon v. New Mexico State Police*, No. 24-2104, 2025 WL 1646180 (10th Cir. June 11, 2025). Thus, neither PSOF 1 nor his Declaration should be considered. *See id.*

PSOF 2.        **Controverted as not supported by the cited record and immaterial.** PSOF 2 is another conclusory and legal opinion about a theory of retaliation that cannot defeat summary judgment and should be disregarded. *See Bones*, 366 F.3d at 875. Further, the cited record does *not* support Plaintiff's statement—the testimony cited in support is devoid of any reference of an alleged "report" made by Feldkamp to Trang Luu, Clinical Risk Manager.

PSOF 3.        **Uncontroverted**.

PSOF 4.        **Controverted as not supported by the cited record or admissible evidence and immaterial.** Feldkamp's Declaration is an inadmissible sham affidavit that cannot be considered. *See Gabaldon*, No. 24-2104, 2025 WL 1646180. And Plaintiff's statement is improperly based on his own speculation and conjecture about UKHA management. *See Bones*, 366 F.3d at 875. Additionally, the cited testimony of Jane Gonzalez, Employee Relations Consultant, does not address in any manner the accusations lodged by Plaintiff against Captain and MacArthur.

PSOF 5.        **Uncontroverted but immaterial.** PSOF 5 is not relied on for support in Plaintiff's argument and is, therefore, immaterial. *See Shepard v. Sullivan*, 2003 WL 1565155, at *4 (10th Cir. 2003) (statements not relied on for support in the argument do not need to be controverted). Further, the characteristics of Luu's position are unrelated to UKHA's decision to terminate Plaintiff.

PSOF 6.        **Uncontroverted but immaterial.** PSOF 6 is not relied on for support in Plaintiff's argument and is, therefore, immaterial. *See id.* Further, the characteristics of Luu's position are unrelated to UKHA's decision to terminate Plaintiff.

PSOF 7.        **Controverted in part as unsupported by the cited record and immaterial.** Chris Ruder's testimony does not support the statement, as he is not able to "admit" anything on behalf

of Luu. PSOF 7 is also immaterial, as Luu was never informed by Plaintiff of any "incidents in the summer of 2022." **SOF 115, 120.**

PSOF 8.    **Controverted as unsupported by the cited record and immaterial.** Plaintiff misrepresents Luu and MacArthur's testimony—Luu testified that she agreed there was a concern for patient injury risk and MacArthur testified that there was a potential for patient safety risk. Ex. I, Luu Dep. 12:6-8; Ex. J, MacArthur Dep. 32:15-33:23. Neither Luu nor MacArthur "admit[ted] that it was a serious patient risk." And Luu and MacArthur's perceptions of the situation are irrelevant and immaterial to Plaintiff's claims, as their perceptions were based on reports from employees other than Plaintiff. **SOF 115, 117, 120, 124.**

PSOF 9.    **Controverted as not supported by the cited record and immaterial.** Luu testified that she did not recall that Plaintiff was in any initial meetings among her, Kelsey Allen-Scruggs, and Holly Grier. Further, Luu testified that she remembered adding Plaintiff to the meetings as part of a "bigger team." Ex. I, Luu Dep. 14:3-19. Regardless, whether Plaintiff was "include[d] in future treadmill conversations" is an extraneous, immaterial fact that has no bearing on whether Plaintiff made a report in accordance with the Kansas Risk Management Act. Mere presence in a meeting or inclusion on an email is not enough to satisfy the statute's requirements.

PSOF 10.    **Uncontroverted but immaterial**, as Plaintiff's appropriateness and others' perception of his appropriateness regarding treadmills is not at issue and is irrelevant to his claims.

PSOF 11.    **Controverted in part as not supported by the cited record and immaterial**. First, Luu testified that she did not speak with Plaintiff one-on-one. **SOF 128.** Second, Plaintiff's email to Captain in which he "raised something about safety" is immaterial and irrelevant to Plaintiff's claims that he made a report in accordance with the Kansas Risk Management Act. *See Parker v. Life Care Ctrs. of Am., Inc.*, No. 04-1206-MLB, 2006 WL 8440524, at *5 (D. Kan. Mar. 31, 2006). ("[P]laintiff is only protected by the provisions of the KRMA if she reported an incident

in accordance with the statute.").

PSOF 12.    **Uncontroverted but immaterial**, as Luu's opinion and assessment about the reason the treadmills were removed from service is irrelevant and has no bearing on whether Plaintiff made a report in accordance with the Kansas Risk Management Act.

PSOF 13.    **Uncontroverted but immaterial**, as Grier's opinion and assessment about the treadmills has no bearing on Plaintiff's claims.

PSOF 14.    **Uncontroverted but immaterial**, as any "reports" are unrelated to UKHA's decision to terminate Plaintiff, and Plaintiff's characterization of the "reports" does not alter the perception and complaints about Plaintiff's disrespectful and unprofessional interactions with environmental services employees. ***See* SOF 33-38.** Plaintiff's own subjective belief about his performance is not relevant at summary judgment. *See Sanders*, 544 F. 3d at 1107.

PSOF 15.    **Uncontroverted.**

PSOF 16.    **Controverted as not supported by the cited record and immaterial**. Ruder testified that Plaintiff was concerned that he was being treated unfairly and mentioned the treadmill situation, about which Ruder was already aware. Ex. K, Ruder Dep. 21:10-19. The cited record does not support the conclusory statement that the meeting was "to discuss discriminatory treatment." And any meeting with Ruder is immaterial and irrelevant to Plaintiff's claims that he made a report in accordance with the Kansas Risk Management Act, as Ruder is not the chief administrative officer of UKHA. *See Parker*, No. 04-1206-MLB, 2006 WL 8440524, at *5; *see also* **SOF 123.**

PSOF 17.    **Controverted as not supported by the cited record and immaterial**. Captain testified that she was "only involved when [employees] asked to meet with me," and her testimony does not support the statement that she initiated any investigation. Ex. L, Captain Dep. 23:24-25. Regardless, the circumstances about which Ruder may or may not have learned about an

investigation is immaterial and irrelevant to UKHA's decision to terminate Plaintiff, especially considering neither Ruder nor Captain were the ultimate decision-makers in deciding to terminate Plaintiff's employment. *See* **SOF 159, 161.**

PSOF 18.        **Uncontroverted but immaterial**, as it only supports Plaintiff's speculative belief that Captain was "out to get" him, and Plaintiff's belief that Captain was "bullying . . . and attempt[ing] to fire him" is testimony based only on speculation. *See Bones*, 366 F.3d at 875; *see also Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1310-11 (10th Cir. 2017) (determining that even where there is animus of a non-decision maker, animus is not relevant unless plaintiff demonstrates it caused the employment decision).

PSOF 19.        **Controverted as not supported by the cited record and immaterial**. Plaintiff misrepresents the cited record, stating that he sent texts about treadmills with Ruder. However, the texts, which are part of a stipulated exhibit, makes no mention of the treadmills, and the texts were sent to Gonzalez to ensure an employee was not working without the proper licensure. ***See* SOF 152-153**. Any communications with Ruder is immaterial and irrelevant to Plaintiff's claims that he made a report in accordance with the Kansas Risk Management Act, as Ruder is not the chief administrative officer of UKHA. *See Parker*, No. 04-1206-MLB, 2006 WL 8440524, at *5; *see also* **SOF 123.**

PSOF 20.        **Controverted in part as not support by the cited record**, as Grier did not testify that Plaintiff ever "recommended that the Nuclear Cardiology department cease use altogether until they was [*sic*] fixed," and **immaterial** as Grier's opinion about how Plaintiff felt about the treadmills is irrelevant to Plaintiff's claims. Ex. M, Grier Dep. 40:4-17.

PSOF 21.        **Controverted as not supported by the cited record or admissible evidence and immaterial.** Ruder's testimony lacks foundation, as he was not involved in the decision to place Plaintiff on administrative leave. Regardless, Plaintiff misstates Ruder's testimony—Ruder

testified that the potential placement of Plaintiff on leave status was "weeks to maybe a month." The testimony does not support the statement that MacArthur and Captain had planned for a "month" to put Plaintiff on a leave of absence. Ex. K, Ruder Dep. 30:3-5. Additionally, the cited record is devoid of any mention to support the statement that MacArthur explicitly stated there was a plan to "fire" Plaintiff. The misrepresented facts are also immaterial, as the circumstances surrounding Plaintiff being placed on a leave of absence, which Ruder admittedly took no part in, has no bearing on the ultimate decision to terminate Plaintiff's employment.

PSOF 22.      **Controverted as not supported by the cited record and immaterial.** MacArthur testified that she became aware of a problem with imaging from a nuclear camera from Captain. Ex. J, MacArthur Dep. 35:9-25. Plaintiff mischaracterizes MacArthur's testimony, stating, without support, that Captain "kept her informed of plaintiff's work 'problems.'" This generalization and fact is also immaterial, as it is irrelevant whether or not MacArthur, Captain's supervisor, was kept apprised of Captain's employees' work.

PSOF 23.      **Controverted as not supported by the record and immaterial.** Plaintiff misstates the cited testimony—Captain did not inform Employee Relations about "her issues" regarding Plaintiff. Rather, Captain met with employees at their request and gave the information to Employee Relations, as requested. Ex. L, Captain Dep. 21:16-23:25. The information were not "write ups" about Plaintiff, but were notes from discussions with employees. *Id.* And whether Captain took notes and shared them with Human Resources, per their request, is immaterial.

PSOF 24.      **Uncontroverted but immaterial**, as Captain being apprised of complaints against Plaintiff, her subordinate, is immaterial, as Captain did not make the decision to terminate Plaintiff. **SOF 159-161**; s*ee Dewitt*, 845 F.3d at 1319-20.

PSOF 25.      **Controverted as not supported by the cited record and immaterial.** Plaintiff's statement of fact is an incomplete recitation of the cited testimony. Gonzalez testified that Captain

8

told employees who reached out to her to contact Gonzalez, as well, because Captain needed assistance from her Employee Relations representative. Ex. N, Gonzalez Dep. 31:10-32:1. The circumstances by which Employee Relations became aware of numerous complaints against Plaintiff is irrelevant and has no bearing on the decision to terminate Plaintiff. Again, Captain did *not* make the decision to terminate Plaintiff. **SOF 159-161;** *see also Dewitt*, 845 F.3d at 1319-20.

PSOF 26. **Controverted as not supported by the cited record or admissible evidence and immaterial.** First, Ruder does not have firsthand knowledge of what MacArthur and Captain knew, so this testimony lacks foundation and is inadmissible hearsay, as Ruder's testimony about what MacArthur said is offered to try and prove the truth of the matter asserted. Second, Ruder testified that Plaintiff was the one who portrayed Derek Blaakman as not having a license in a text message to Dr. Thomas Rosamond, Director of Nuclear Cardiology. Ex. K, Ruder Dep. 36:18-37:10. What MacArthur and/or Captain knew about Blaakman's licensure as their individual knowledge of the situation has no bearing on Plaintiff's claims.

PSOF 27. **Controverted as not supported by the cited record and immaterial.** The cited testimony refers to "management," but does not name Captain and MacArthur. Thus, Plaintiff's statement that "Captain and MacArthur wanted HR to finish up documentation" is unsupported by the cited record. Additionally, Gonzalez testified that management wanted to talk to a physician or physicians about "the fact that there were concerns from multiple staff members." Ex. N, Gonzalez Dep. 33:6-34:5. Management's intention to speak with physicians about these concerns is irrelevant and immaterial, as these physicians did not make the decision to terminate Plaintiff.

PSOF 28. **Controverted in part as not supported by the record.** Captain testified that she and Dr. Rosamond were in agreement that "we wouldn't have a nuclear department if we continued with [Plaintiff's] leadership and we would need to make a change." Ex. L, Captain Dep. 33:6-9. Captain, however, was not part of the decision to terminate Plaintiff.

PSOF 29.    **Controverted in part as not supported by the cited record and immaterial.**
Both Captain and Ruder testified that UKHA uses progressive discipline "at times." Ex. L, Captain
Dep. 15:2; Ruder Dep, 42:8. UKHA's generalized, discretionary use of progressive discipline
and/or Performance Improvement Plans has no bearing on Plaintiff's claims.

PSOF 30.    **Controverted in part as not supported by the cited record and immaterial.**
Gonzalez testified that UKHA uses Performance Improvement Plans as a tool "sometimes." Ex.
N, Gonzalez Dep. 71:15. UKHA's generalized, discretionary use of progressive discipline and/or
Performance Improvement Plans has no bearing on Plaintiff's claims.

PSOF 31.    **Controverted as not supported by the cited record and immaterial.** Plaintiff's
statement of fact is an incomplete recitation of the cited testimony. MacArthur testified that, after
conducting due diligence, it was imperative that Plaintiff no longer be with the organization; Ruder
testified that he was not aware of a formal improvement plan; and Captain testified that human
resources had Plaintiff complete Helix training modules. Ex. J, MacArthur Dep. 44:6-11; Ex. K,
Ruder Dep. 42:19-20; Ex. L, Captain Dep. 16:22-17:3. The record does not support the statement
that "they explicitly chose NOT to utilize progressive discipline with plaintiff." Additionally,
neither Ruder nor Captain made the decision to terminate Plaintiff, and any choice not to use
optional progressive discipline is immaterial and has no bearing on Plaintiff's claims. *See* **SOF
159, 161.**

PSOF 32.    **Controverted in part as not supported by the cited record and immaterial.**
Plaintiff's conclusory belief of "discriminatory treatment from Barbara MacArthur and Becky
Captain" is based only on Plaintiff's speculation and belief and does not contradict Ruder's
legitimate perception of Plaintiff's manner and behavior due to information from employees. Ex.
K, Ruder Dep. 43:17-19. Thus, PSOF 32 is immaterial and should be disregarded. *See Bones*, 366
F.3d at 875.

104200296.4

PSOF 33.    **Controverted as not supported by the record or admissible evidence and immaterial.** Feldkamp's Declaration is an inadmissible sham affidavit that cannot be considered. *See Gabaldon*, No. 24-2104, 2025 WL 1646180. Further, Plaintiff's statement that his replacement is "significantly less experienced" is not supported by the record or admissible evidence. Whether Plaintiff believes his replacement to be "significantly less experienced" is entirely irrelevant and immaterial to his claims.

PSOF 34.    **Uncontroverted but immaterial and irrelevant**, as the operation of the treadmills after Plaintiff's termination date has no bearing on the reasons for Plaintiff's termination.

PSOF 35.    **Controverted as not supported by the record or admissible evidence and immaterial.** Feldkamp's Declaration is an inadmissible sham affidavit that cannot be considered. *See Gabaldon*, No. 24-2104, 2025 WL 1646180. Additionally, PSOF 35 relies on allegations that are unsupported by the record and lack evidentiary support. Instead, PSOF 35 consists of entirely conclusory, speculative statements reflecting Plaintiff's own beliefs or those of Brandy Lockridge, a non-party, non-witness whose opinion is irrelevant to this case and cannot now be used to attempt to create a material dispute of fact.

PSOF 36.    **Immaterial.** Ray Schumacher's employment at UKHA and employment relationship with Plaintiff are irrelevant to Plaintiff's claims.

PSOF 37.    **Immaterial.** Schumacher's opinion and experience working with Plaintiff are irrelevant and cannot controvert the perceptions of decisionmakers or the facts as they appeared to decisionmakers.

PSOF 38.    **Immaterial.** Schumacher's opinion and experience working with Plaintiff are irrelevant and cannot controvert the perceptions of decisionmakers or the facts as they appeared to decisionmakers.

PSOF 39.    **Immaterial.** The circumstances surrounding Schumacher's departure from UKHA

have no bearing on Plaintiff's claims and are irrelevant.

PSOF 40.    **Immaterial.** Dr. James Vacek's opinion and experience working with Plaintiff are irrelevant and cannot controvert the perceptions of decisionmakers or the facts as they appeared to decisionmakers.

PSOF 41.    **Immaterial.** Vacek's opinion and experience working with Plaintiff are irrelevant and cannot controvert the perceptions of decisionmakers or the facts as they appeared to decisionmakers.

PSOF 42.    **Immaterial.** Vacek's opinion and experience working with Plaintiff are irrelevant and cannot controvert the perceptions of decisionmakers or the facts as they appeared to decisionmakers.

## III.    ARGUMENT

### A.    As a matter of law, Plaintiff cannot demonstrate a *prima facie* case of age discrimination, and Plaintiff waived his right to respond.

Plaintiff has not satisfactorily established a *prima facie* case of age discrimination to survive summary judgment. Plaintiff's statement that "[i]t is agreed by both parties to this action that plaintiff satisfies the first three elements of his *prima facie* case of age discrimination" is entirely false. UKHA specifically states that Plaintiff fails to establish the second element of a *prima facie* case of age discrimination—Plaintiff cannot demonstrate that he was performing satisfactory work. **(SOF 14-38, 39-51, 58-78, 79-104, 105-112, 148-154, 156).**

Plaintiff fails to respond to this argument; instead, Plaintiff incorrectly argues that UKHA "attempts to argue that plaintiff cannot satisfy the final element, due to all pertinent individuals involved being over the age of 40." UKHA does not make any such argument about the fourth element of a *prima facie* case. Indeed, UKHA acknowledged that Mitch Bronson, Plaintiff's replacement, was younger than Plaintiff, though he is 53 years old. **(SOF 162).**

UKHA argued that Plaintiff's conduct ultimately demonstrated that he was not performing

satisfactorily as the Nuclear Cardiology Director, and he did not meet UKHA's legitimate expectations. *See Kelly-Kofi v. Wesley Med. Ctr.*, 241 F. Supp. 2d 1289, 1294 (D. Kan. 2003) (finding that plaintiff failed to establish a prima facie case of discrimination where she failed to show she was meeting her employer's legitimate expectations). Plaintiff has waived his right to respond or controvert the facts asserted in support of UKHA's argument that Plaintiff cannot satisfy the second essential element of a *prima facie* case. *See Austin v. Recover-Care Healthcare LLC*, No. 23-4037-DDC-RES, 2025 WL 55324, at *2 (D. Kan. Jan. 9, 2025) ("When a party fails to respond to a motion for summary judgment 'within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion.'") (quoting *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002)). Accordingly, Plaintiff has not controverted all of the prima facie elements of age discrimination and UKHA is entitled to summary judgment.

   **B.    Plaintiff fails to proffer evidence that UKHA's legitimate, non-discriminatory, and non-retaliatory reason for his termination is pretextual.**

       Assuming Plaintiff can satisfy his *prima facie* burden, which he cannot, Plaintiff has not proffered any evidence that UKHA's legitimate, non-discriminatory, and non-retaliatory reason for his termination is pretextual. Although Plaintiff disagrees with his termination, a challenge of pretext "requires the court to view the facts as they appeared to the person who made the termination decision." *Vega v. Sprint*, 2004 WL 2414100, at *13 (D. Kan. Oct. 25, 2004) (citation omitted). UKHA's perception of Plaintiff's performance issues is relevant, not Plaintiff's skewed opinion of his own performance. *See Sanders*, 544 F.3d 1101 at 1106 (affirming summary judgment holding on age claim, holding that "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance . . . .") (citation omitted).

       Plaintiff's only evidence to support his argument that there was "a strong ageist bias"

against Plaintiff are his own beliefs about his performance. And, even if UKHA "was mistaken or used poor business judgment," which it did not, Plaintiff has to do more than suggest that the employer "g[ot] it wrong." *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017); *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). Plaintiff's conclusory statements that he "satisfactorily exercised his job responsibilities" and "treat[ed] his employees equally and fairly," holds no weight here.

Plaintiff also misstates the record evidence and fails to provide admissible evidence to support his argument. For instance, Plaintiff falsely states that Captain "encouraged" complaints against Plaintiff, misstating the cited record. Captain met with employees who asked to speak with her and gave Human Resources the notes in order to appropriately document the numerous complaints being lodged against Plaintiff. **(SOF 79-90).** Additionally, Plaintiff tries to argue that UKHA did not follow a "required" policy, thus creating an inference of pretext. This is not supported by the record. Instead, progressive discipline is a tool that is "sometimes" used when appropriate; nothing in the record supports Plaintiff's argument that it is a *required* practice. Ex. N, Gonzalez Dep. 71:15.

Finally, Plaintiff's reliance on his sham affidavit to support his argument that Captain "threatened plaintiff . . . stat[ing] that she wished to replace all of the 'older managers'" is inadmissible. *See Gabaldon v. New Mexico State Police*, No. 24-2104, 2025 WL 1646180 (10th Cir. June 11, 2025). Plaintiff cannot continue to rely on his own conspiracies based on speculation and gossip to survive summary judgment. Ultimately, Plaintiff cannot establish that the decision to terminate his employment occurred because of discriminatory reasons, and UKHA is entitled to summary judgment.

**C.    Plaintiff did not and cannot show that he made a report in accordance with the Kansas Risk Management Act or was terminated for any alleged report.**

Plaintiff incorrectly argues that the Kansas Risk Management Act has "broad" language,

14

attempting to fit the facts of his case into the statute's purview. The statute requires that a Plaintiff report a reportable incident in accordance with the statute's language. *See Parker v. Life Care Ctrs. Of Am., Inc.* The statute states that a "report" be made to the "chief of the medical staff, chief administrator officer or risk manager of the facility." K.S.A. § 65-4923. This language is not ambiguous or broad—the report *must* be made to one of those individuals. Simply put, Plaintiff did not make any such report. Trang Luu, Clinical Risk Manager, testified that she did not speak with Plaintiff one-on-one and was not informed about the treadmills by Plaintiff. **(SOF 120-121, 124, 127-129, 135)**. And Plaintiff's reliance on the "temporal proximity" between his meeting with Chris Ruder, Chief Operating Officer, and Plaintiff's administrative leave is unpersuasive. Plaintiff's meeting with Ruder was *months* after the treadmill situation came to light due to reports, albeit not from Plaintiff, and does not satisfy the statute's reporting requirements—Ruder is not the Chief Administrative Officer. **(SOF 123).**

Plaintiff also attempts to incorporate his "pretext evidence" to rebut UKHA's argument that Plaintiff was not terminated for making any such "report," which it denies he made pursuant to the Kansas Risk Management Act. However, Plaintiff fails to acknowledge that similarly situated employees who actually made a report in accordance with the statute were not demoted, disciplined, or discharged. **(SOF 136-138).** Plaintiff does not successfully rebut the legitimate, non-discriminatory reasons for his termination; he only reiterates that he had "exemplary qualifications and history with UKHA," completely ignoring his documented performance issues. In short, Plaintiff cannot put forth sufficient evidence to create a genuine issue of material fact on the issue of pretext.

## IV.    CONCLUSION

For these reasons and those in its Brief in Support of Summary Judgment, UKHA requests summary judgment be granted in its favor on Plaintiff's claims.

104200296.4

Respectfully submitted,

POLSINELLI PC

By: */s/ Elizabeth E. Berg*
    ERIC E. PACKEL (#23070)
    MEGHAN H. HANSON (D. KAN. #78869)
    ELIZABETH E. BERG (D. KAN. #79145)
    900 W. 48th Place, Suite 900
    Kansas City, MO 64112
    (816) 753-1000
    Fax No: (816) 753-1536
    epackel@polsinelli.com
    mhanson@polsinelli.com
    eberg@polsinelli.com

    ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the above and foregoing pleading was served by (___) United States Mail, postage prepaid; (X) ECF Notification System; and/or (___) E-mail this 20th day of June, 2025 to:

    Albert F. Kuhl, Esq.
    Law Office of Albert F. Kuhl
    9393 W. 110th Street, Suite 500
    Overland Park, KS  66210
    913-638-8022
    Fax:  913-369-7714
    al@kcjoblawyer.com

    ATTORNEYS FOR PLAINTIFF

                 By: */s/ Elizabeth E. Berg*

16

104200296.4