IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL FELDKAMP,

  Plaintiff,

  v.

UNIVERSITY OF KANSAS HOSPITAL
AUTHORITY,

  Defendant.

Case No. 2:24-CV-02220-JAR

### MEMORANDUM AND ORDER

  Plaintiff Michael Feldkamp filed this removal action against his former employer, Defendant University of Kansas Hospital Authority, alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), and Kansas state law wrongful termination in violation of K.S.A. § 65-4928. This matter is now before the Court on Defendant's Motion for Summary Judgment (Doc. 49), Plaintiff's Motion for Leave to File Sur-reply (Doc. 60), and Defendant's Motion to Strike Plaintiff's Sur-reply (Doc. 63). The motions are fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants Plaintiff's Motion for Leave to File a Sur-reply, denies Defendant's Motion to Strike, and grants summary judgment for Defendant.

**I. Summary Judgment Standard**

  Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[10] The non-moving party cannot avoid

---

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[7] *Anderson*, 477 U.S. at 256.

[8] *Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[10] *Adams v. Am. Guar. & Liab. Ins.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[11]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[12]

## II.   Uncontroverted Facts

The following material facts are either uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff.[13]

Defendant University of Kansas Hospital Authority ("KUHA") is a healthcare system providing healthcare to residents of Wyandotte County, Kansas, the metropolitan Kansas City area, and the nation. KUHA employed Plaintiff Michael Feldkamp from 1991 until the Vice President of Cardiac Services, Barbara MacArthur ("MacArthur"), terminated his employment on or about February 6, 2023. At the time of his termination, Plaintiff was 63 years old and held the title of Nuclear Cardiology Director. Plaintiff brings the present action alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), and wrongful termination in violation of K.S.A. § 65-4928.

---

[11] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199) (10th Cir. 2006) (citations omitted).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[13] Defendant asks this Court to disregard Plaintiff's affidavit under the sham affidavit rule without argument, or citation to the record. However, Defendant seemingly mistakes the purpose and scope of the sham affidavit rule as prohibiting mere speculation and conjecture. *See generally* Doc. 58. In fact, the sham affidavit rule serves a much narrower function for the purposes of admissibility. *See generally Gabaldon v. New Mexico State Police*, 139 F.4th 1207, 1212 (10th Cir. 2025) ("Put simply, a litigant cannot go into a deposition, deny remembering key events, then submit an affidavit at summary judgment stating that he reviewed evidence disclosed before his deposition and now remembers material facts to create a genuine dispute. Such a result would undermine the discovery process."). The rule requires the affidavit directly contradict prior testimony (*see id.*), but Defendant fails to point the Court to any testimony. Although the Court declines to exclude Plaintiff's affidavit under the sham affidavit rule, it is legally immaterial to the issue of whether MacArthur's reasons for terminating Plaintiff were pretextual. Accordingly, for the purposes of the present procedural posture, the Court will admit Plaintiff's affidavit; however, as explained below, Plaintiff nonetheless fails to demonstrate that *MacArthur's* reasons for termination were pretextual.

In 2017, the Joint Commission, the certification body responsible for organizational safety surveys, discovered out-of-date protocols and policies in Plaintiff's department. After receiving notification of the surveyor's findings of out-of-date protocols, MacArthur and the Medical Director advised Plaintiff that the survey findings were inappropriate.

On or around October 14, 2019, Spring Palcher, an echocardiogram nurse, filed a complaint with Employee Relations about Plaintiff's behavior toward her following a confrontation regarding the storage of linens. Following Employee Relations' receipt of Palcher's complaint, Defendant provided Plaintiff with coaching on how to remain calm and effectively lead in confrontational situations like the one Plaintiff had with Palcher.

In November 2020, Becky Captain, Director of Cardiovascular Clinical Practice and Plaintiff's supervisor, received an email from Jeff Novorr, Vice President of Support Operations, escalating an interaction between Plaintiff and Regina Steward, a housekeeper. Steward complained to Captain of Plaintiff's rude behavior following an incident where Plaintiff allegedly demanded Steward mop the floor while talking with her about her medical leave after a recent hip replacement surgery.

In February 2021, Captain provided Plaintiff a review and compilation of staff reviews concerning his preceding 2020 performance. Captain testified that she copied and pasted into Plaintiff's review what staff reported about Plaintiff, including that he is "never welcoming and open to help" and "[h]e is very difficult to approach with problems." Plaintiff signed the review but never saw the employee comments, nor did he receive a copy of the evaluation.

In June 2022, Denise Hashman, who reported to Plaintiff and was out on leave, called Jane Gonzalez, Employee Relations Consultant. Hashman complained to Gonzalez that Plaintiff told her to get her medications checked; Hashman informed Employee Relations that she had to

4

see a psychiatrist due to Plaintiff's treatment of her. Because Hashman was concerned about Plaintiff retaliating against her for going to Employee Relations, Hashman asked Gonzalez not to speak to Plaintiff regarding her complaint.

In August 2022, Hashman returned to work from medical leave and met with Captain to discuss Plaintiff's treatment toward her. Captain testified that Hashman was tearful with a runny nose during the entire meeting, and that Hashman stated she was diagnosed with pseudodementia caused by stress and anxiety from working with Plaintiff. Hashman also stated that she had to go to the Emergency Department for high blood pressure due to work-related stress. In December 2022, Hashman again spoke with Gonzalez; Hashman accused Plaintiff of poor management and stated that she had seen Plaintiff retaliate against others.

Also in August 2022, Captain and MacArthur learned that a nuclear camera was not operating properly and discovered that Plaintiff was not following internal standards for repairing a malfunctioning nuclear camera. Plaintiff, on his own accord, experimented with the camera settings without consulting the internal resources that accompany this highly technical equipment.[14]

Throughout the fall of 2022, multiple employees raised concerns about Plaintiff's Nuclear Department to Captain, including Denise Hashman, Kelly George, Riley Wenzell, and Derek Blaakman, who passed them along to Human Resources. Captain spoke with Plaintiff's

---

[14] Drawing all inferences in Plaintiff's favor, Plaintiff still fails to controvert whether he consulted internal resources, as required by internal standards. In fact, Plaintiff's summary judgment briefing fails to ever mention or reference KUHA's internal standards for repairing malfunctioning equipment. *See* Doc. 55; *see also* Doc. 61. Importantly, Plaintiff fails to meaningfully address Defendant's Proposed Uncontroverted Facts concerning the camera incident, including SUMF 105 that stated, "MacArthur learned that a nuclear camera was not operating properly and discovered that Plaintiff was not following internal standards regarding a nuclear camera." Doc. 50 at ¶ 105. Rather, Plaintiff repeatedly responds that he "continued to resolve the issue by way of cooperating with GE servicepersons to adjust the camera hardware." Doc. 55 at 11. This does not meet the requisite standard under Fed. R. Civ. P. 56(e)(1) and D. Kan. R. 56.1(a).

staff members in the Nuclear Department, including, among others, Denise Hashman, Riley Wenzel, Kellee George, and Austin Kirkwood.  Gonzalez also spoke with many of these individuals to conduct due diligence and provide information for management's decision regarding Plaintiff's employment.

In December 2022, Gonzalez conducted interviews with seven employees from Plaintiff's department; Gonzalez's notes summarized the group interviews, which included allegations that Plaintiff had communication issues, problems with disrespectful behavior, and issues managing the department.  The findings from these interviews included allegations that Plaintiff had poor communication skills; treated others horribly; was condescending, manipulative, and disrespectful; treated Hashman differently and disrespectfully; and caused frustration within the department due to poor scheduling skills.  Moreover, Derek Blaakman, a Nuclear Technologist, informed Gonzalez that employees do not feel comfortable going to Human Resources about Plaintiff because they fear retaliation.

On January 5, 2023, Plaintiff met with Cherie Smith, Employee Relations Manager, and Jane Gonzalez.  At this meeting, Gonzalez and Smith shared the concerns that were documented during the Employee Relations investigation and asked Plaintiff for his input on the various situations reported.  Gonzalez, Smith, and Plaintiff discussed, among other things, Plaintiff's admission that he questioned his staff about their discussions with Human Resources, as well as issues that arose in his 2020 evaluation that did not resolve after that evaluation.  Gonzalez and Smith ultimately placed Plaintiff on administrative leave, effective January 6, 2023.

While Plaintiff was on administrative leave, decisionmakers, including MacArthur, the ultimate decisionmaker regarding termination, convened multiple times to discuss Plaintiff's continued employment.  Eventually, MacArthur decided Plaintiff's continued employment was

6

untenable considering the evidence detailing failures in adhering to internal procedures, poor communication and management, and maltreatment of employees. Accordingly, MacArthur terminated Plaintiff's employment on February 6, 2023.

## III.   Discussion

Defendant moves for summary judgment on Plaintiff's two remaining claims: (1) age discrimination under the ADEA, and (2) wrongful termination under K.S.A. § 65-4928. The Court addresses each claim separately.

### A.   Age Discrimination Under the ADEA

Count I alleges that Defendant discriminated against Plaintiff in violation of the ADEA. Plaintiff alleges he was unlawfully terminated because of his age.

The ADEA makes it unlawful for an employer to discriminate against an employee "because of such individual's age."[15] A plaintiff can prove an ADEA claim through direct or circumstantial evidence.[16] "[D]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."[17] If Plaintiff lacks direct evidence of his age discrimination claim, the Court must apply the burden-shifting framework set out in *McDonnell Douglas v. Green*.[18] Under this framework, Plaintiff "must first establish a prima facie case of discrimination;" this burden is "not onerous."[19] If Plaintiff meets his initial burden, the burden shifts to Defendant "'to articulate some legitimate, nondiscriminatory reason' for its action."[20]

---

[15] 29 U.S.C. § 623(a).

[16] *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

[17] *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quoting *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002)).

[18] 411 U.S. 792 (1973).

[19] *Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[20] *Mauldin*, 136 F.4th at 993 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Finally, if Defendant meets its burden, the Court must afford Plaintiff a fair opportunity to show that Defendant's stated reason was pretextual.[21]

### 1. Prima Facie Case

Here, Plaintiff lacks direct evidence that Defendant terminated his employment because of his age. Thus, the Court must apply the *McDonnell Douglas* framework to determine if there is sufficient circumstantial evidence. First, the Court determines whether Plaintiff establishes a prima facie case of age discrimination. To state a prima facie claim for age discrimination, Plaintiff must allege: (1) he is a member of the class protected by the ADEA, that is, over 40 years of age; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated less favorably than others not in the protected class.[22]

As an initial matter, Plaintiff incorrectly asserts that the parties agree that Plaintiff satisfied the "first three elements of his prima facie case of age discrimination."[23] Rather, the parties agree that Plaintiff is over forty (40) years old, was terminated from employment, and was replaced by a younger person. The parties explicitly dispute the third element that Plaintiff was performing satisfactory work. However, despite Plaintiff's misplaced argument, the burden imposed on a plaintiff at the prima facie stage is "not onerous."[24] A plaintiff need only submit some credible evidence that she was performing satisfactory work.[25] Here, Plaintiff meets this extremely low burden. Plaintiff provides evidence that at least some of his colleagues found

---

[21] *Id.*

[22] *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010).

[23] Doc. 55 at 24.

[24] *Tungol v. Certainteed Corp.*, 202 F. Supp. 2d 1189, 1197 (D. Kan. 2002) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[25] "We have explained that the plaintiff need show only 'some evidence of good performance.'" *See Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1336 (10th Cir. 2025) (quoting *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1421 (10th Cir. 1991)).

Plaintiff competent as a manager and supervisor, that Plaintiff possessed satisfactory knowledge and ethics, and that Plaintiff did not subject them to any form of mistreatment.[26] Accordingly, drawing all inferences in Plaintiff's favor, Plaintiff has met his prima facie burden, and the onus shifts to the Defendant.[27]

### 2.     Defendant's Nondiscriminatory Reason for Termination

The burden now shifts to Defendant to articulate some legitimate, nondiscriminatory reason for terminating Plaintiff's employment. "The defendant's burden is 'exceedingly light,' as its stated reasons need only be legitimate and non-discriminatory 'on their face.'"[28] Defendant proffers a legitimate, non-discriminatory reason for Plaintiff's termination: after a fact-finding investigation by several Employee Relations members concluded Plaintiff failed to adhere to internal procedures concerning faulty equipment, lacked satisfactory communication and management skills, and that Plaintiff, on more than one occasion, mistreated employees.

### 3.     Pretext

The burden therefore shifts back to Plaintiff to demonstrate a genuine issue of material fact as to whether Defendant's reason for terminating his employment was pretextual.[29] "A plaintiff may show pretext by demonstrating the 'proffered reason is factually false,' or that 'discrimination was a primary factor in the employer's decision.'"[30] Pretext may be shown by

---

[26] *See* Docs. 55-3 and 55-10.

[27] As discussed in the Court's pretext analysis, the result is the same whether the Court addresses the parties' arguments at the first *McDonnell Douglas* inquiry or the third. *See*, *e.g.*, *Boliere v. Robert Brodgen's Olathe Buick-GMC Inc.*, 706 F. Supp. 3d 1275, 1297 (D. Kan. 2023); *see also Power v. Koss Constr. Co.*, 499 F. Supp. 2d 1194, 1203 (D. Kan. 2007) (citing *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992) (suggesting that when poor job performance is the proffered reason for termination, it is better analyzed in the second and third *McDonnell Douglas* stages and not at the prima facie stage))).

[28] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017).

[29] *McIntosh v. Metro. Tulsa Transit Auth.*, 176 F. App'x 932, 934 (10th Cir. 2006).

[30] *Id.* (first quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2017); and then quoting *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1194 (10th Cir. 2016)).

demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[31]  The Court examines "the facts as they appear to *the person making the decision* to terminate plaintiff."[32]

Plaintiff offers several unavailing arguments for finding pretext; the Court addresses each in turn.  First, Plaintiff argues each fact involving his performance issues "bears an equal and opposite inference of disparate treatment."[33]  The Court disagrees.  Plaintiff fails to demonstrate that any of Defendant's examples of performance issues, as they appeared to MacArthur, survive his pretext burden.  For example, Plaintiff simply asserts that he attempted to fix the malfunctioning nuclear camera on his own and reported it, but he fails to address MacArthur's assertion that he did not adhere to hospital guidelines for dealing with malfunctioning equipment.  Plaintiff also disagrees with MacArthur's reliance on the Joint Commission's findings that he failed to adhere to nuclear technologist protocols; this again does not meet his pretext burden to refute facts as they appeared to MacArthur.  Plaintiff contends the litany of employee complaints about his conduct are explained away with his version of each complaint, but this is not the standard.  Rather, Plaintiff must address MacArthur's understanding of and reliance on these complaints and not simply argue with the underlying complainants.  Additionally, Plaintiff's allegations that Captain encouraged these complaints, without support in the record, is unavailing and irrelevant to understanding whether the decisionmaker's proffered reasons for termination are pretextual.

---

[31] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006).

[32] *Fisher v. Sw. Bell Tel. Co.*, 361 F. App'x 974, 979 (10th Cir. 2010) (quoting *Kendrick*, 220 F.3d at 1231) (emphasis added).

[33] Doc. 55 at 27.

Second, Plaintiff argues pretext is established by Defendant's failure to offer progressive disciplinary measures. However, Plaintiff is unable to demonstrate that any sort of performance improvement plan is required, or would have even been reasonable, for his situation. In fact, Plaintiff does not dispute that such policies were anything more than tools sometimes used depending on the situation; even so, Plaintiff does not dispute record evidence that Defendant considered but ultimately decided against a performance improvement plan considering Plaintiff's history of being unreceptive to feedback and coaching. Finally, Plaintiff's own briefing concedes that Defendant "does not appear to have a stringent policy or practice in regard to its non-utilization of corrective/progressive discipline."[34] As such, Plaintiff fails to establish pretext through Defendant's decision to not offer an optional performance improvement plan.

Third, and finally, Plaintiff argues that direct evidence of mistreatment by Captain gives rise to an inference of pretext. Plaintiff attests in his declaration that Captain openly stated her intention to replace all older managers.[35] But Plaintiff fails to show that Captain's alleged open suggestion to replace the older managers gives rise to pretext. First, Plaintiff fails to provide evidence of temporal proximity between Captain's statement and Plaintiff's termination.[36] Second, MacArthur, not Captain, was the undisputed final the decisionmaker who ultimately terminated Plaintiff's employment. And Plaintiff fails to put forth argument advancing a cat's-paw theory. Third, and lastly, Plaintiff fails to argue that Captain's alleged statement that she

---

[34] *Id.* at 30.

[35] To the extent Plaintiff is also arguing Captain's alleged comment is direct evidence of actual pretext, the Court is likewise unconvinced by Plaintiff's failure to demonstrate temporal proximity or context between the alleged statement and his termination. *See Perry v. Woodward*, 199 F.3d 1126, 1134 (10th Cir.1999) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994)) ("When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination, this court has held that the plaintiff must demonstrate a nexus exists between [the] allegedly discriminatory statements and the decision to terminate her").

[36] *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007) (finding no link between allegedly discriminatory statements and termination where the party alleging wrongful termination failed to produce any evidence of context or temporal proximity to the termination).

wished to replace all the older managers is anything more than a "stray remark" too remote to support a finding of pretext.[37]

In sum, Plaintiff's pretext arguments either lack record support or do not render Defendant's proffered reasons to be so weak, implausible, inconsistent, incoherent, or contradictory that a reasonable factfinder could find them "unworthy of credence."[38]  Instead, Plaintiff simply disagrees with the underlying employee complaints and HR investigation notes that MacArthur reviewed as part of her termination decision.  The Court's role is not to ask whether the employer's decision was "wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs."[39]

Because nothing in the record suggests Plaintiff can establish pretext, and Plaintiff fails to provide the Court with anything more than unsupported conclusory allegations, the Court finds Plaintiff failed to establish a genuine issue of material fact.[40]  Accordingly, the Court grants summary judgment on Plaintiff's ADEA claim.

### B.  Wrongful Termination Under K.S.A. 65-4928

Plaintiff's remaining claim alleges that Defendant retaliated against and terminated him in violation of K.S.A. § 65-4928.  Whether to exercise supplemental jurisdiction is committed to the Court's sound discretion.[41]  28 U.S.C. § 1367 "reflects the understanding that, when deciding

---

[37] Kirkpatrick v. Pfizer, Inc., 391 F. App'x 712, 720 (10th Cir. 2010).

[38] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013).

[39] *Johnson v. Weld County*, 594 F.3d 1202, 1211 (10th Cir. 2010) (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)).

[40] *Fisher,* 361 F. App'x at 979 (quoting *Finstuen v. Crutcher,* 496 F.3d 1139, 1144 (10th Cir. 2007) (noting that "[u]nsupported conclusory allegations . . . do not create an issue of fact").

[41] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *see also Anglemyer v. Hamilton Cty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"[42]  Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.[43]  "When 'the parties have already expended a great deal of time and energy on the state law claims,' it is appropriate for the 'district court to retain supplemented state claims after dismissing all federal questions.'"[44]  "If, however, the parties have not shown they have spent a great deal of time on the state law claims, the 'district court should normally dismiss supplemental state law claims after all federal claims are dismissed.'"[45] "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[46]  The Tenth Circuit has "repeatedly recognized that this is the preferred practice."[47]

Here, the Court has dismissed Plaintiff's federal claim for age discrimination in violation of the ADEA.  Plaintiff's remaining claim for wrongful termination in violation of K.S.A. § 65-4928 presents this Court with arguments that he made a report in accordance with the statutory language of K.S.A. 65-4923, and that the alleged incident is a reportable incident under K.S.A. § 65-4921.  These arguments raise questions of purely state law.  Importantly, they also task the Court with interpreting the scope and purpose of Kansas state statutes.  Now absent any federal

---

[42] *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Loc. 7 United Food & Com. Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld Cty. Commr's*, 365 F.3d 855 (10th Cir. 2004).

[43] *Ball v. Renneri,* 54 F.3d 664, 669 (10th Cir. 1995).

[44] *Villalpando ex rel. Villalpando v. Denver Health & Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) (quoting *United States v. Botefuhr*, 309 (F.3d 1263, 1273 (10th Cir. 2002)).

[45] *Id.*

[46] *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[47] *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).

claims, the Court declines supplemental jurisdiction over Plaintiff's state-law wrongful termination claim. Plaintiff's remaining state law claim is accordingly dismissed without prejudice for lack of supplemental jurisdiction.[48]

## IV.   Plaintiff's Sur-Reply

On July 7, 2025, Plaintiff filed both a sur-reply and a motion for leave to file a sur-reply. Plaintiff argued his sur-reply "addresses one issue not adequately addressed previously in the parties' briefing, relative to notification given to defendant by plaintiff as regards plaintiff's claim of unlawful retaliation in violation of Kansas statutory law."[49] Defendant then filed its motion to strike Plaintiff's sur-reply, arguing Plaintiff failed to obtain leave from this Court to do so and that Plaintiff's sur-reply failed to address any new arguments warranting leave.[50]

"Under D. Kan. Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response, and a reply. Surreplies typically are not allowed."[51] Additionally, under D. Kan. Rule 15.1(a)(2), a "party filing a motion to amend or a motion for leave to file a pleading or other document that may not be filed as a matter of right must attach the proposed pleading or other document." Here, Plaintiff filed his motion for leave to file a sur-reply and his sur-reply separately.[52] However, considering Plaintiff filed his motion for leave and sur-reply consecutively, and provided simultaneous service to Defendant of the same, the Court will grant Plaintiff's motion for leave to file sur-reply and deny Defendant's motion to

---

[48] 28 U.S.C. § 1367(c)(3); *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006).

[49] Doc. 60.

[50] Doc. 63.

[51] *COPE v. Kan. State Bd. of Educ.*, 71 F. Supp. 3d 1233, 1238 (D. Kan. 2014) (citation omitted).

[52] *See* Doc. 60; *see also* Doc. 61.

strike. Regardless, the Court's consideration of Plaintiff's sur-reply advancing new arguments in support of his state law wrongful termination claim does not alter the foregoing.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment on Counts I and III (Doc. 49) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply (Doc. 60) is **granted** and Defendant's Motion to Strike Plaintiff's Sur-Reply (Doc. 63) is **denied**. The Clerk is directed to enter a judgment.

**IT IS SO ORDERED.**

Dated: September 15, 2025

                                            S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE